UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREGORY MONZEGLIO,
                          Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,
                          Defendant.

17-CV-760 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiff Gregory Monzeglio seeks review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties move for judgment on the pleadings. For the reasons that follow, the Commissioner's motion is granted and Monzeglio's motion is denied.

**I.    Background**

    Monzeglio was born in 1964. (Dkt. No. 8 ("Tr.") at 53.) He worked most recently as a union carpenter, and has been a member of both the laborers' and carpenters' unions. (Tr. at 56–59.) He alleges that he was injured on the job in 2008, could no longer perform his work as a carpenter, and was ultimately laid off in 2010. (Tr. at 58, 84–85.) He has not worked since then. (Tr. at 59–60.)

    Monzeglio applied for DIB and SSI in 2011. (Tr. at 153.) He thereafter requested and received a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration. (Tr. at 46–87.) At the hearing, Monzeglio testified that he experiences a "sharp" pain in his side and ribs, which causes him difficulty in sitting, standing, and walking. (Tr. at 61–64, 72–75.) He also spoke of depression stemming from unemployment, past

incarceration, and physical pain. (Tr. at 82–86.) In 2013, ALJ Roberto Lebron denied Monzeglio's application. (Tr. 155–72.) On appeal, the Social Security Appeals Council found that ALJ Lebron's decision was not adequately supported by medical or vocational evidence and remanded for further proceedings to gather additional evidence. (Tr. 175–76.) In order to address the evidentiary deficiencies noted by the Appeals Council, a consultative physician, Dr. Marilee Meson, examined Monzeglio in 2015. (Tr. 781–801.) ALJ Katherine Edgell held additional hearings in January and June 2015, during which she heard testimony from a vocational expert, a consulting physician hired by the Commissioner, and Monzeglio. (Tr. 88–146.) ALJ Edgell also considered evidence from two further consultative examinations by Dr. Joseph DeFeo and psychologist Dr. Jeffrey Rubin, both arranged by Monzeglio after receiving the Appeals Council's decision. (Tr. 679–92, 754–77.)

On August 19, 2015, ALJ Edgell found that Monzeglio was not eligible for DIB or SSI. (Tr. at 17.) Although the ALJ concluded that Monzeglio had severe impairments that created "more than minimal limitations" on his ability to work, she also concluded that Monzeglio had the capacity to perform "simple repetitive work" with "non-exertional limitations" and to have "occasional interaction with coworkers." (Tr. at 23, 25.) And because the ALJ found that such jobs exist in significant numbers in the national economy, she concluded that Monzeglio was not eligible for DIB or SSI. (Tr. at 35–36.)

The ALJ found that "[Monzeglio's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." (Tr. at 34.) In reaching this conclusion, the ALJ specifically relied on three medical opinions.

<u>Dr. Varlotta</u>: Dr. Gerard P. Varlotta is a specialist in sports medicine who saw Monzeglio several times between February 10, 2011, and January 18, 2012. (Tr. at 652, 659.)

2

Monzeglio's primary care physician, Dr. Sultan Ahmed, referred Monzeglio to Dr. Varlotta for chronic pain management and physical rehabilitation. (Tr. at 600.) Dr. Varlotta's unchanging written medical opinions concluded that Monzeglio's symptoms would frequently and significantly interfere with his ability to work, and Dr. Varlotta diagnosed a number of restrictions on Monzeglio's ability to sit, stand, and move in the workplace. (Tr. at 587–93, 620, 622.) Dr. Varlotta noted that, in his opinion, Monzeglio was unable to carry out the physical demands of a full work day because he would require frequent rest breaks, and would be unable to sit, stand, or walk for long periods of time. (Tr. at 587–93, 620, 622.) The ALJ gave Dr. Varlotta's opinions "slight weight" because his conclusions were "not supported by the record as a whole" and were "primarily based on [Monzeglio's] subjective complaints rather than objective findings." (Tr. at 27; *see also* Tr. at 26, 29.)

Dr. Auerbach: Dr. A. Auerbach examined Monzeglio once in 2011. (Tr. at 604–05, 612–13.) He opined that Monzeglio was capable of standing and sitting for long periods of time, concluding that Monzeglio's reported "symptoms seem out of proportion to the underlying objective pathology." (Tr. at 612.) The ALJ gave Dr. Auerbach's opinion "great weight" because it was "based upon a thorough review of the record . . . and [was] consistent with the record at that time that showed minimal objective findings." (Tr. at 28.)

Dr. Mescon: Dr. Marilee Mescon is an orthopedist who examined Monzeglio in 2015. (Tr. at 781.) Dr. Mescon concluded that there were "no limitations [on Monzeglio's] ability to sit, stand, climb, push, pull, or carry heavy objects." (Tr. at 783.) The ALJ gave Dr. Mescon's opinion "significant weight" because it was "consistent with her benign examination findings." (Tr. at 32.)

3

After receiving ALJ Edgell's unfavorable decision, Monzeglio requested review of the ALJ's decision, which the Social Security Appeals Council denied. (Tr. at 1.) This suit followed. On September 19, 2017, Monzeglio moved for judgment on the pleadings. (Dkt. No. 15.) He argues that the ALJ's decision was incorrect because she failed to properly weigh the opinions of (i) treating physician Dr. Varlotta, (ii) consulting physician Dr. Joseph DeFeo, and (iii) consulting psychologist Dr. Jeffrey Rubin. (*Id.*) The Commissioner filed a cross-motion for judgment on the pleadings in response. (Dkt. No. 17.)

## II.  Legal Standard

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A court may not substitute its judgment for the Commissioner's, "even if it might justifiably have reached a different result upon a *de novo* review." *Downes v. Colvin*, 2015 WL 4481088, at *6 (S.D.N.Y. July 22, 2015) (quoting *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011)). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d. Cir. 2014). However, "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard," remand to the Commissioner "for further development of the evidence" is appropriate. *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)). Accordingly, this Court determines only whether the ALJ based her decision on sufficient

evidence and applied proper legal standards. The Court does not decide whether Monzeglio is in fact disabled.

## III. Discussion

Monzeglio's primary contention is that the ALJ improperly discounted the opinion of Dr. Varlotta, his treating physician. (Dkt. No. 15-1 ¶¶ 34, 38.) When making social security determinations, ALJs are bound by the "treating physician rule." *Kessler v. Colvin*, No. 14 Civ. 8201, 2015 WL 6473011, at *4 (S.D.N.Y. Oct. 27, 2015). The rule mandates that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2)). The reason for this rule is that treating physicians offer a "unique perspective [on] the medical evidence" that cannot otherwise be obtained from the record. 20 C.F.R. § 404.1527(c)(2).

However, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In situations where "the treating physician issued opinions that [were] not consistent with other substantial evidence in the record, such as the opinions of other medical experts," the treating physician's opinion "is not afforded controlling weight." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).[1] "In order to override the opinion of the treating physician, . . . the ALJ must explicitly consider, *inter alia*: (1)

---

[1] Additionally, findings that "a claimant is disabled and cannot work . . . are reserved to the Commissioner," and a treating physician's opinion on these points is not afforded controlling weight. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (quoting 20 C.F.R. § 404.1527(e)(1)) (internal quotation marks omitted).

the frequently, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."[2] *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *see also* 20 C.F.R. § 404.1527(c)(2). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Aronis v. Barnhart*, No. 02 Civ. 7660, 2003 WL 22953167, at *5 (S.D.N.Y. Dec. 15, 2003) (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)) (internal quotation marks omitted).

The ALJ determined that Dr. Varlotta's opinion was not supported by substantial medical evidence in the record for three reasons.

First, the ALJ gave little weight to Dr. Varlotta's opinion because it was "primarily based on [Monzeglio's] subjective complaints rather than objective findings." (Tr. at 27; *see also* Tr. at 26, 29, 32.) The ALJ expressed concern that "there are no treatment records or objective clinical findings that support the opinions that the claimant is unable to work or has the extreme limitations found by his treating sources." (Tr. at 33.)

On the one hand, Dr. Varlotta was entitled to consider Monzeglio's subjective complaints of pain when forming his medial opinion. "[M]edically acceptable clinical and laboratory diagnostic techniques" that may properly support a physician's opinion "include consideration of [a] patient's report of complaints, or history, [a]s an essential diagnostic tool." *Burgess*, 537 F.3d at 128 (alterations in original) (quoting *Green-Younger v. Barnhart,* 335 F.3d 99, 107 (2d

---

[2] Although the ALJ did not address each factor separately, "[i]t is not necessary that the ALJ recite each factor explicitly" if "the decision reflects application of the substance of the rule." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011); *see also Mayor v. Colvin*, No. 15-CIV-0344, 2015 WL 9166119, at *16 (S.D.N.Y. Dec. 17, 2015) ("[A]n ALJ need not expressly enumerate each factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear.").

6

Cir. 2003)) (internal quotation marks omitted). Although Dr. Varlotta's notes are not extensive, over a year of treatment and examinations, Dr. Varlotta diagnosed Monzeglio with right quadratus lumborum muscle strain, tendonitis, right posterior serratus muscle strain, and torsion dystonia. (Tr. at 563–67, 583–84.) Dr. Varlotta gave Monzeglio botox and corticosteroid injections, referred him for physical therapy, and eventually recommended surgery after concluding that Monzeglio would not improve further. (Tr. at 622.)

On the other hand, the ALJ did not err in giving Dr. Varlotta's opinion less credence because he considered *only* subjective evidence. *See, e.g., Cosnyka v. Colvin*, 576 F. App'x 43, 45 (2d Cir. 2014) (discounting treating physician's opinion because it was not supported by objective medical evidence). During the year of treatment, there is minimal evidence in the record that Dr. Varlotta conducted any physical examinations of Monzeglio. (*See* Tr. at 563, 569, 573, 652–53.) In a medical opinion dated October 5, 2011, the only objective medical evidence cited by Dr. Varlotta to support his conclusion is an MRI that showed "multilevel degenerative disease." (Tr. at 588.) Other than the MRI, Dr. Varlotta relied solely on Monzeglio's subjective complaints. (*Id.*; Tr. at 621–22.)

Second, the ALJ credited the opinions of consulting physicians Dr. Auerbach and Dr. Mescon, who both interpreted the medical evidence differently than did Dr. Varlotta. Dr. Auerbach reviewed Monzeglio's records in December 2011, including the MRI evidence, and also conducted a physical examination of Monzeglio. (Tr. at 612.) Based on this evidence, Dr. Auerbach observed that Monzeglio's "symptoms seem out of proportion to the underlying objective pathology" and concluded that he could lift up to twenty pounds and stand or sit for six to eight hours per day, with postural limitations. (*Id.*) Similarly, Dr. Mescon conducted a full

7

physical examination of Monzeglio several years later and found that Monzeglio had "no limitations in [his] ability to sit, stand, climb, push, pull, or carry heavy objects." (Tr. at 783.)

Third, the ALJ found Monzeglio's testimony regarding his symptoms to be less than credible. She based her credibility findings on (i) serious inconsistencies between Monzeglio's reports of pain and the objective medical evidence, (ii) inconsistencies between Monzeglio's testimony regarding his limited abilities and lack of medical evidence of muscular atrophy, and (iii) inconsistencies between Monzeglio's testimony and the record regarding his use of illegal drugs and prescription pain medication. (Tr. at 33.)

"When determining a claimant's [residual functional capacity], the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; [s]he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Furthermore, "courts must show special deference to an ALJ's credibility determinations because the ALJ had the opportunity to observe plaintiff's demeanor while testifying." *Marquez v. Colvin,* 12 Civ. 6819, 2013 WL 5568718 at *7 (S.D.N.Y. Oct. 9, 2013). Here, ALJ Edgell observed Monzeglio at two hearings and noted several major inconsistencies in his testimony. The Court cannot conclude that she lacked substantial evidence to support her adverse credibility finding.

In summary, the ALJ recognized the treating physician rule and, considering all relevant factors, adequately explained why she declined to afford controlling weight to Monzeglio's treating physician. Dr. Varlotta's findings were inconsistent with substantial evidence in the record, benign diagnostic imaging, and opinions of consulting physicians. Tr. at 26–31. It was

8

not legal error for the ALJ to resolve this "[g]enuine conflict[] in the medical evidence" by discounting Dr. Varlotta's opinion. *Veino*, 312 F.3d at 588.

Additionally, Monzeglio alleges that the ALJ evinced bias when she discounted Dr. DeFeo's medical opinion based on the fact that Monzeglio's counsel arranged for Dr. DeFeo's consultation. (Dkt. No. 15-1 ¶ 22.) However, the ALJ did not discount Dr. DeFeo's opinion solely on this basis. Rather, the ALJ gave several reasons which reflect legitimate concerns with Dr. DeFeo's medical opinion, including inconsistencies between his diagnosis and Monzeglio's level of treatment and daily activities. (Tr. at 30.) Furthermore, an ALJ is entitled to consider a doctor's potential biases when weighing her opinion and credibility. Doctors and other witnesses are regularly cross-examined about these topics in civil trials. *See, e.g.*, *Caldwell v. Cablevision Sys. Corp.*, 20 N.Y.3d 365, 372 (2013) (holding that the trial court "acted within its discretion in concluding that the fee payment [to a witness] was fertile ground for cross-examination and comment during summation").

Furthermore, there is no evidence that the ALJ improperly discounted Dr. Rubin's opinion. She afforded Dr. Rubin's opinion "some weight" because Monzeglio's representations to Dr. Rubin "contradict[ed] testimony and other medical evidence in [the] file." (Tr. at 31.) Nevertheless, the ALJ considered Dr. Rubin's assessment in her determination as to Monzeglio's residual functional capacity and limited Monzeglio to jobs involving simple work and low contact with other people. (Tr. at 31–33.)

Dr. DeFeo and Dr. Rubin are both consulting physicians who examined Monzeglio once. "[A] consulting physician's opinions or report should be given limited weight . . . because 'consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day.'"

*Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990) (citation omitted) (quoting *Torres v. Bowen*, 700 F. Supp. 1306, 1312 (S.D.N.Y. 1988)).  Their opinions are not entitled to any special deference as treating physicians.

## IV. Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is GRANTED and Monzeglio's motion is DENIED.

The Clerk of Court is directed to close the motions at Docket Numbers 15 and 17, and to close the case.

SO ORDERED.

Dated: March 28, 2018
New York, New York

_____
J. PAUL OETKEN
United States District Judge